Timothy Michael LAHEY, II,
Plaintiff–Appellant,

v.

DEPARTMENT OF REVENUE OF the STATE OF COLORADO, MOTOR VEHICLE DIVISION, Defendant–Appellee.

No. 93CA1521.

Colorado Court of Appeals,
Div. II.

July 14, 1994.

Rehearing Denied Aug. 18, 1994.

Scheitler & Elio, P.C., Frank I. Scheitler, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge TAUBMAN.

Plaintiff, Timothy Michael Lahey, II, appeals from the district court judgment affirming the revocation of his driver's license by the Department of Revenue (Department) for refusing to submit to testing as required by the express consent statute. Because the arresting officer permitted plaintiff to change the type of test he wished to take in violation of the applicable statutory requirements, we conclude that plaintiff did not "refuse" to submit to such testing within the meaning of the statute. Accordingly, we reverse and remand with directions to set aside the order of revocation.

The evidence at the revocation hearing established that, following plaintiff's arrest for driving under the influence of alcohol (DUI), the arresting officer offered him his statutory choice between taking either a blood test or a breath test. See § 42–4–1202(3)(a)(II), C.R.S. (1993 Repl.Vol. 17). It is undisputed that, in response, plaintiff unequivocally elected to take a blood test at that time and that no further discussion regarding plaintiff's testing options ensued while he was then transported from the scene to a detoxification center.

It is also undisputed that, upon arriving at the detoxification center, the arresting officer initiated further questioning of plaintiff regarding the testing options and gave him the opportunity to change his mind and to choose to take a breath test instead. After a brief delay, plaintiff thereupon changed his mind and chose to take a breath test.

Later, however, following two observation periods of at least 20 minutes prior to the actual administration of the breath test, plaintiff again attempted to change his selection of tests back to a blood test. The arresting officer then told plaintiff that he could not change his selection of tests and that, because he had chosen a breath test, he could either take the breath test or a refusal of testing would be entered. When plaintiff again requested a blood test at that point, the arresting officer considered that to be a refusal of testing.

In considering the foregoing facts, the hearing officer ruled that plaintiff had indeed refused to submit to testing because his behavior was uncooperative and indicated that he either was "unwilling to submit" to a test or was "trying to delay" the testing process. The hearing officer acknowledged that plaintiff had initially elected a blood test and that the arresting officer had "actually violated" the express consent statute in allowing him to change his selection to a breath test. Nevertheless, the hearing officer further ruled that the officer's violation was "a matter of courtesy" to plaintiff that was "not prejudicial" to him and that it was thereafter "appropriate" to hold plaintiff to his subsequent election of the breath test.

Accordingly, the hearing officer ordered the revocation of plaintiff's driver's license for one year for refusing to submit to testing as required by the express consent statute. *See* §§ 42–2–122.1(1.5)(a)(II) & 42–2–122.-1(8)(c)(I), C.R.S. (1993 Repl.Vol. 17). On review, the district court upheld the revocation, and this appeal followed.

Plaintiff contends that the revocation was improperly ordered in this case because the hearing officer's ruling that he refused testing under the circumstances here was based on the application of erroneous legal standards. We agree.

Under the express consent statute, following a DUI arrest, a suspected drunk driver has the statutory right and responsibility to choose between taking either a blood test or a breath test to determine his or her blood alcohol content. *See* § 42–4–1202(3)(a)(II), C.R.S. (1993 Repl.Vol. 17); *Shumate v. Department of Revenue,* 781 P.2d 181 (Colo.

App.1989); *see also Brewer v. Motor Vehicle Division,* 720 P.2d 564 (Colo.1986).

As pertinent to the issues here, however, the express consent statute was amended in 1989 by the addition of the following provisions:

> If such person [*i.e.,* the arrested driver] elects either a blood test or a breath test, *such person shall not be permitted to change such election,* and, if such person fails to take and complete, and to cooperate in the completing of, *the test elected,* such failure shall be deemed to be a refusal to submit to testing.

Section 42–4–1202(3)(a)(II), C.R.S. (1993 Repl.Vol. 17) (emphasis added); *see* Colo. Sess.Laws 1989, ch. 363 at 1615. Under this amendment, the General Assembly has removed any discretion an arresting officer may have previously had concerning an arrested driver's desire to change the type of test he or she wishes to take.

■ The provisions of the express consent statute must be construed as creating mutual rights and responsibilities for both the arresting officer and the arrested driver in connection with the applicable testing requirements. Specifically, under these provisions, when an arresting officer invokes the sanctions of the express consent law by requesting an arrested driver to submit to such testing and the driver makes the required election between testing options, the arresting officer has a corresponding duty to implement the driver's election without allowing the driver to change such election. *See* § 42–4–1202(3)(a)(II), C.R.S. (1993 Repl.Vol. 17); *People v. Gillett,* 629 P.2d 613 (Colo. 1981) (similarly construing provisions of predecessor former implied consent statute).

■ Thus, we reject the Department's argument on appeal that an arresting officer has the "discretion" under the express consent statute to decide if and when an arrested driver should be offered the opportunity to change the driver's previous election between the testing options to the alternative test. To the contrary, under the quoted provisions of the current statute, a driver's election between the testing options is now deemed to be irrevocable, and the arresting

officer is required to implement the test so elected, and only that test. *See* § 42–4–1202(3)(a)(II); *People v. Gillett, supra.*

The result we reach here—setting aside a license revocation—may seem inconsistent with the General Assembly's limitation of the rights of arrested drivers under the express consent law amendment. Nevertheless, we conclude that imposing a duty on arresting officers to require an arrested driver to adhere to his or her initial test choice is precisely what the General Assembly intended.

Here, once plaintiff elected to take a blood test, this choice became irrevocable as a matter of law, and all further questioning of plaintiff by the arresting officer regarding his testing options should have ceased. At that point, the arresting officer was statutorily prohibited from permitting plaintiff to change his election to a breath test, and the officer was required, instead, to hold plaintiff to his election and to attempt to implement plaintiff's statutory right to the blood test he had then elected. Even so, despite plaintiff's consent to taking the blood test, the arresting officer made no attempt to implement such a test, in violation of plaintiff's statutory rights and his own statutory duties. *See* § 42–4–1202(3)(a)(II); *People v. Gillett, supra.*

Moreover, because plaintiff's initial election was irrevocable as a matter of law, under the quoted statutory provisions, only *plaintiff's* failure to take, to complete, and to cooperate in the completing of the *blood test* could constitute a refusal to submit to testing as required by the express consent statute. Thus, the subsequent lack of cooperation by plaintiff in failing to complete the *breath test* is immaterial to the refusal issues here. *See* § 42–4–1202(3)(a)(II).

Under these circumstances, we also conclude that plaintiff did not "refuse" to submit to a blood test. Rather, in our view, the lack of a completed blood test resulted from the arresting officer's failure to implement plaintiff's initial, binding choice of this test, and not because of any failure by plaintiff to cooperate in taking and completing such a test. *See Sedlmayer v. Charnes,* 767 P.2d 754 (Colo.App.1988) (express consent revocation for refusing testing reversed on review because arresting officer's unilateral decision that driver was physically incapable of taking breath test without giving him opportunity to attempt it was not equivalent to a refusal to take it); *see also People v. Gillett, supra* (dismissal of criminal DUI charges was appropriate remedy for arresting officers' violations of drivers' statutory rights to requested blood tests under former implied consent statute).

Thus, because the license revocation for refusing testing was based on the application of erroneous legal standards, it cannot be sustained on judicial review, and the district court therefore erred in upholding it. *See* § 42–2–122.1(9)(b), C.R.S. (1993 Repl.Vol. 17).

In light of this disposition of the issues, we need not address the remaining contentions of the parties.

Accordingly, the district court judgment is reversed, and the cause is remanded with directions to set aside the order of revocation.

CRISWELL and MARQUEZ, JJ., concur.